**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SAMUEL GANNELLI, | DOCKET NUMBER |
| Appellant, | AT-0752-22-0454-I-1 |
| v. | |
| DEPARTMENT OF JUSTICE, | DATE: April 24, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joel J. Kirkpatrick, Esquire, Canton, Michigan, for the appellant.

Clairanne Wise, Esquire, and Luke Archer, Springfield, Virginia, for the
agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which
mitigated the appellant's removal to a letter of reprimand. Generally, we grant
petitions such as this one only in the following circumstances: the initial decision
contains erroneous findings of material fact; the initial decision is based on an
erroneous interpretation of statute or regulation or the erroneous application of

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's analysis of the lack of candor charge and her penalty analysis, we AFFIRM the initial decision.

## BACKGROUND

¶2 The appellant was a GS-1811-13 Criminal Investigator (Special Agent) for the agency's Drug Enforcement Administration (DEA), assigned to the West Palm Beach District Office in Florida. Initial Appeal File (IAF), Tab 1 at 1, Tab 4 at 19. On or around July 2020, the appellant was selected for reassignment to the Mazatlan, Mexico office, which is part of the North and Central American Region that was then-headed by Senior Executive Service (SES) Regional Director (RD), N. Palmeri. Hearing Transcript (HT) at 240 (testimony of N. Palmeri), 264 (testimony of the appellant). The appellant began attending Spanish language school, handing off his West Palm Beach investigative work, and going on a series of temporary duty assignments in Mazatlan. HT at 264-65 (testimony of the appellant). On February 25, 2021, while the appellant was still assigned to the West Palm Beach District Office, the appellant and RD Palmeri met with a Confidential Source (CS)[2] and conducted a debrief at the CS's residence in Miami, Florida. IAF, Tab 1 at 9. On March 25, 2021, an agency official reported that RD Palmeri had met with a CS and other individuals despite a directive

---

[2] CS and Confidential Informant are used interchangeably. IAF, Tab 1 at 10.

prohibiting the meetings and requested an investigation. *Id.* The appellant was interviewed in connection with this investigation on April 30, May 26, and September 8, 2021. IAF, Tab 5 at 227-278, 406-490; Tab 7 at 4-57.

¶3      On December 22, 2021, the agency proposed the appellant's removal based on the charges of improper association with a CI/Suspect, lack of candor, failure to follow written or oral instructions, and false statements/documents. IAF, Tab 1 at 9-23. The charges alleged that the appellant engaged in improper association with a CS when he conducted a debriefing in a social setting at the CS's residence, in the presence of the CS's spouse and friends, and where the CS provided food and drinks; that the appellant knowingly provided less than candid responses to questions as to whether he consumed alcohol during the debriefing; that the appellant failed to timely submit a DEA-6 form documenting the debriefing; and that the appellant knowingly provided false statements to investigators regarding a violation of a confidentiality agreement. *Id.* On May 24, 2022, the deciding official, S. Sutherland, issued a decision letter sustaining the charges and removing the appellant effective the next day. IAF, Tab 1 at 24-26, Tab 4 at 19.

¶4      The appellant timely filed the instant petition for review. IAF, Tab 1. After holding the requested hearing, the administrative judge issued an initial decision mitigating the agency's action. IAF, Tab 46, Initial Decision (ID) at 1. The administrative judge concluded that the agency did not prove its charges of improper association with a CI/Suspect, ID at 3-13, lack of candor, ID at 13-16, and false statements/documents, ID at 16-20. However, she sustained the third charge of failure to follow written or oral instructions. ID at 16. The administrative judge thereafter found that the agency proved nexus, ID at 20, but that the penalty of removal was beyond the maximum reasonable penalty for the sustained charge, ID at 20-23. The administrative judge mitigated the penalty to the maximum reasonable penalty warranted for the charge of failure to follow

written or oral instructions, which in this case she found to be a letter of reprimand. ID at 23.

¶5 The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant filed a response, PFR File, Tab 3, and the agency filed a reply, PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 On review, the agency argues that the administrative judge erred in finding that the agency did not prove its charges of improper association with a CI/Suspect, lack of candor, and false statements/documents, and that the administrative judge erred in mitigating the penalty of removal to a letter of reprimand. PFR File, Tab 1 at 9-23. We address these arguments below.

The administrative judge properly found that the agency did not prove the first charge, improper association with a CI/Suspect.

¶7 In the notice of proposed removal (NOPR), the agency alleged:

[O]n February 25, 2021, you engaged in improper association with a CS when you met with a CS at the CS's residence, and conducted a debriefing while the CS's spouse was seated at the table with you, as well as RD Palmeri, and RD Palmeri's spouse. In addition, while at the CS's residence, you participated in a social setting where food and drinks, including alcohol, were provided by the CS. In the multiple hours you spent at the CS's residence, there were other non-law enforcement personnel present on the CS's property, including the CS's family members, as well as a male and female friend of the CS's, who were preparing the food. By your own admission, DEA sensitive law enforcement information was discussed during the CS debriefing, and the CS's spouse was within hearing distance of the conversation.

IAF, Tab 1 at 10. The agency cited two internal policies in support of its charge, which state that:

DEA employees are prohibited from associating with individuals known or suspected to be involved in illegal drug trafficking or other criminal activity in other than a strictly professional capacity. This prohibition also applies to CSs and former CSs. Extrinsic social, financial or business contacts with individuals of this nature are

expressly prohibited. DEA employees are to strictly maintain only the highest standards of conduct with respect to informants, known criminals, or with individuals engaged in criminally violative activity.

. . .

A Controlling Investigator shall not socialize with a CS except to the extent necessary and appropriate for operational reasons. Personal business, social, or romantic relationships between DEA employees or other authorized personnel and CSs are strictly prohibited.

*Id.* at 12-13. In the proposal, the agency also further discussed several statements that the appellant made in his investigative interviews regarding the above allegations and his alleged improper association with the CS, including the appellant's testimony that he and RD Palmeri were at the CS's property for approximately 3-4 hours, during which the CS showed them around the property; the CS served food, wine, and beer; RD Palmeri brought his wife, and the wife and the CS's spouse were "within earshot" when the appellant and RD Palmeri debriefed the CS about drug trafficking information. *Id.* at 10-13.

¶8        In the initial decision, the administrative judge thoroughly discussed the allegations and testimony cited in the NOPR regarding the circumstances of the February 25 debriefing, as well as the hearing testimony of S. Sutherland, the deciding official; the appellant; RD Palmeri; and J. Hunt, an expert in DEA policy and procedures relating to federal narcotic investigations, including control of cooperating sources and the implementing chain of command for special agents. ID at 3-9. Among other things, the administrative judge noted that the appellant testified that he had previously worked with the CS and RD Palmeri, and that, in early 2021, RD Palmeri ordered him to go to a debriefing of the CS because the appellant had knowledge of the inner workings in Mexico. ID at 6-7. The administrative judge noted that the appellant recognized that it "was not good" when RD Palmeri arrived at the debriefing with his wife but that he explained that RD Palmeri was a senior executive and agents are told to never to leave another agent alone with a CS. ID at 7; HT at 284-85

(testimony of the appellant). The administrative judge also noted that the appellant testified that because the three individuals had not seen each other in a while, there was time spent communicating on a personal level and the CS was excited to show them around his property. ID at 7. She also explained that both the appellant and RD Palmeri testified that during the debriefing, the appellant, RD Palmeri, and the CS sat down at one end of two 6-feet long picnic tables pushed together with the wives at the other end. ID at 7; HT at 271-72 (testimony of the appellant). The administrative judge also discussed J. Hunt's testimony that informants are not "robots" and that agents cannot help having a certain level of social interaction with an informant who is trusting the agent with their life. ID at 9.

¶9        In analyzing the charge, the administrative judge reviewed the language of the two internal policies cited above and found, among other things, that a "fair reading" of the two provisions is that the DEA prohibits its agents from engaging in a personal, social relationship with a CS outside of the professional one, but that "some socialization with a CS is allowed as long as the agent is acting in a 'strictly professional capacity' and 'to the extent it is necessary and appropriate for operational reasons.'" ID at 10; IAF, Tab 1 at 12-13. The administrative judge concluded that the appellant went to the February 25 debriefing in a "strictly professional capacity" because he was ordered to attend by a highly ranked superior in charge of his future placement and because there was no evidence that the appellant otherwise had a social friendship with the CS. ID at 10. In addition, the administrative judge found that the appellant's conduct did not go beyond what she considered necessary and appropriate for operational reasons because she credited J. Hunt's testimony that it is routine for agents to meet at an informant's residence; she found that the appellant's acquiescence to a tour of the CS's property appeared to be nothing more than being congenial; and she found that although the spouses may have been within "earshot" of the debriefing, J. Hunt testified that he had met informants literally hundreds of times

in restaurants where a debriefing could be conducted in a manner where others cannot hear what is being said, and that this was no different. ID at 9-13. The administrative judge also found that the agency did not show that the appellant drank any alcohol during the debriefing or that the appellant's presence alone while others were drinking showed that the appellant violated the agency's improper association policies. ID at 12. Additionally, the administrative judge discussed the fact that although S. Sutherland testified that the appellant should have disengaged himself from the debrief at some point and violated DEA policy by not doing so, S. Sutherland's "failure to acknowledge at least some of the facts that support[ed] the appellant's position show[ed] a demeanor of a determined bias against him, which render[ed] S. Sutherland's testimony unpersuasive." ID at 11 (citing *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987)). The administrative judge thus concluded that the agency did not prove the charge. ID at 13.

¶10      On review, the agency first argues that the administrative judge erroneously interpreted and applied the two above-noted DEA policies by ignoring in her analysis the fact that the first policy states that DEA employees are to "strictly maintain only the highest standards of conduct with respect to informants" and that the second policy states that "[p]ersonal business, social, or romantic relationships between DEA employees or other authorized personnel and CSs are strictly prohibited." PFR File, Tab 1 at 11-13; IAF, Tab 1 at 12-13. To this end, the agency claims that the administrative judge's "selective" interpretation of these policies to mean improper association is "no personal social relationship outside of the professional one," is contradictory to the plain language of the policies, and that DEA policy clearly prohibits more than simply a "relationship with informants outside of the DEA relationship." PFR File, Tab 1 at 12-13; ID at 10. However, the agency's arguments are unpersuasive. The administrative judge correctly cited the language of the policies the agency referenced in its NOPR in her initial decision. ID at 3; IAF, Tab 1 at 12-13. The administrative

judge did not, as the agency argues, find that improper association simply means no relationship with a CS outside of the DEA relationship. The administrative judge explained that the agency could prove its improper association charge by showing that the appellant's conduct at the debriefing went beyond what is considered necessary and appropriate for operational reasons. ID at 13. Although the administrative judge may have focused on a specific phrase in the first policy that states that DEA employees are prohibited from associating with CSs in "other than a strictly professional capacity," and a phrase in the second policy that states that investigators shall not socialize with a CS "except to the extent necessary and appropriate for operational reasons," a full reading of her analysis demonstrates that she correctly understood and applied the language of the two DEA policies. ID at 9-13. Her discussion encompassed an analysis of whether the appellant "strictly maintain[ed] only the highest standards of conduct" with respect to the debriefing. ID at 3, 9-13. We see no error in the administrative judge's interpretation and application of the two DEA policies.[3] *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

¶11     The agency also puts forth that it believes that the appellant's conduct at the February 25 debriefing was an extrinsic social contact with a CS, an association in "other than a strictly professional capacity," was not of the "highest standards of conduct," and was not "necessary and appropriate for operational reasons." PFR File, Tab 1 at 13-14. The agency reiterates that it believes that the

---

[3] In addition, the second policy that the agency cited in its notice of proposed removal appears to apply only to "controlling investigators." IAF, Tab 1 at 13. As the administrative judge noted, the agency did not present evidence that the appellant was a "controlling investigator." ID at 9 n.4. However, we agree with the administrative judge that there is no need to address this discrepancy because the agency did not show that the appellant engaged in improper association as defined by either policy. ID at 9 n.4.

appellant's actions of touring the CS's property, engaging in conversation unrelated to DEA business, and having dinner where both alcohol and the spouses were present, as a whole, are "material evidence" that the appellant improperly associated with the CS. *Id.* at 13. However, the agency's arguments clearly constitute mere disagreement with the administrative judge's weighing of the evidence and provide no reason for disturbing the initial decision. *See Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (the appellant's mere disagreement with the administrative judge's weighing of the evidence does not establish a basis for review).

¶12    The agency also contends that the administrative judge erroneously looked at each aspect of the February 25 meeting separately, instead of looking at the entirety of the circumstances. PFR File, Tab 1 at 14 n.4. We disagree. Although the administrative judge considered in turn the various allegations the agency made in its NOPR as to why the appellant improperly associated with the CS, the administrative judge still implicitly considered the totality of the circumstances. ID at 9-13. Additionally, the agency argues that the administrative judge ignored J. Hunt's testimony that it was not "operationally necessary" for non-DEA personnel to be present at a CS debriefing or to have dinner with the spouses present. PFR File, Tab 1 at 13; HT at 218-19 (testimony of J. Hunt). However, the administrative judge's failure to mention all of the extensive testimony and evidence does not mean that she did not consider it in reaching her decision. *See Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶13    With regard to the first charge, the agency also argues in its petition for review that the administrative judge erroneously focused on whether the two spouses had "overheard" the debriefing in her analysis of whether the agency showed improper association, instead of that it was inappropriate for the spouses to be present at the briefing at all. PFR File, Tab 1 at 14-15. To this end, the agency emphasizes that the NOPR did not conclude that the spouses overheard

the debriefing; rather, it noted that the spouses were within "earshot" when the debriefing occurred, which was inappropriate as those non-DEA personnel could have potentially overheard sensitive, confidential information. *Id.* at 15. The agency argues that the administrative judge erred in concluding that the spouses seated at the end of the table was no different than a restaurant setting, because her conclusion ignored an important distinction that, here, the "others" were spouses, in a venue hosted by the CS, where food and alcoholic drinks were present. *Id.*

¶14 The agency's arguments are unpersuasive. In support of the first charge in the NOPR, the agency repeatedly discussed testimony from its investigative interviews regarding how the "CS's spouse was seated at the table," that "the CS's spouse was within hearing distance," "whether there were other people at the table," and "whether the spouses were in earshot." IAF, Tab 1 at 10-11. In the initial decision, the administrative judge noted that the proposed removal gave the "impression that the CS's spouse was participating in the debriefing itself," and she discussed testimony on this issue and stated that "the agency's conclusion that [the spouses] overheard the details of the debriefing" was not supported. ID at 12. We discern no error in the administrative judge expounding on her reading of the proposed removal on this issue. Furthermore, the administrative judge considered the agency's argument as to the appropriateness of the spouses' presence because she specifically discussed hearing testimony on this issue, including S. Sutherland's unpersuasive testimony that "it was highly improper to have a family member or others present while the debriefing was occurring," ID at 5, the appellant's consistent testimony that he has previously met a CS at their home with family members present, ID at 7, RD Palmeri's testimony that the debriefing was limited to himself, the appellant, and the CS, ID at 8, and J. Hunt's testimony that it was not apparent that the spouses overheard the debriefing and that it would have been worse for the appellant to have left RD Palmeri with the CS, ID at 9. Although the agency disputes the

administrative judge's conclusion that the presence of the spouses was similar to that of a debriefing being conducted near other patrons at a restaurant, the agency's argument, as do its other contentions, simply disagrees with the administrative judge on this point. *See Yang v. U.S. Postal Service*, 115 M.S.P.R. 112, ¶ 12 (2010) (stating that arguments that constitute mere disagreement with the initial decision do not provide a basis to grant the petition for review).

¶15      Finally, the agency argues on review that the administrative judge erroneously found that "the meal and drinks with the CS" did not violate agency policy. PFF File, Tab 1 at 16. In the initial decision, the administrative judge addressed the fact that the CS served food at the February 25 debriefing and stated that "there is no evidence that [the meal] was anything other than some bar-b-que ribs, which in and of itself appears somewhat harmless, [and] not violative of the agency's policy," citing in a footnote the agency's policy regarding exchanging gifts and engaging in a financial transaction with a CS. ID at 12. The administrative judge also found that the agency did not show that the appellant drank any alcohol and that his presence while others were drinking was not unlike a restaurant setting and did not show that he violated the agency's improper association policy. ID at 12. In its petition, the agency claims that the administrative judge "incorrectly relied" on its provision regarding gifts because the appellant was not charged with violating that policy. PFR File, Tab 1 at 16. However, the agency included this provision in the agency file, and the deciding official, S. Sutherland, testified that he believed an informant providing a meal was "tantamount to a gift." IAF, Tab 8 at 37; HT at 43 (testimony of S. Sutherland). Furthermore, such an analysis goes to the issue of whether the appellant engaged in conduct with the CS that was "expressly prohibited." IAF, Tab 1 at 12. The agency also reargues that the administrative judge failed to examine the meal "in the context of the totality of the circumstances," and that the meal was not "somewhat harmless" because in combination with it being at the CS's residence, with the spouses and alcohol present, the situation was not of

the "highest standards of conduct" or "necessary and appropriate for operation reasons." PFR File, Tab 1 at 16. However, these arguments, again, also provide no basis for disturbing the initial decision. *See Yang*, 115 M.S.P.R. 112, ¶ 12; *see also Crosby*, 74 M.S.P.R. at 106.

<u>The administrative judge properly found that the agency did not prove the second charge, lack of candor.</u>

¶16    To prove a charge of lack of candor, the agency must prove that (1) the appellant gave incorrect or incomplete statements and (2) that he did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 17 (2016). Unlike falsification, lack of candor does not require an intent to deceive. *Id.*, ¶ 16. A lack of candor charge may involve a failure to disclose something that, under the circumstances, should have been disclosed to make the given statement accurate and complete. *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002). Lack of candor is a broader and more flexible concept whose contours and elements depend upon the particular context and conduct involved. *Id.*

¶17    In the NOPR, the agency alleged that during the appellant's May 26, 2021 supplemental interview, he "knowingly provided less than candid responses to [Office of Professional Responsibility (OPR)] Inspectors['] questions as to whether [he] consumed alcohol during a CS debriefing, resulting in a lack of candor." IAF, Tab 1 at 13. The proposal described the appellant's responses to the questions of whether he brought or drank alcohol at the February 25 debriefing as evasive, such as when he responded with answers like: "I'm a Bud Light drinker, sir. So, I don't drink wine. If the CS had, I know the CS had other beer there, I just can't remember what type exactly;" "To my recollection, no, sir;" "To my recollection, I can't recall, sir, because typically when I meet with the CS, in particular, I always bring a big Diet Coke, because I know, I've known for years, CS drinks red wine, and I'm not a wine drinker. And, obviously, in my OGV I'm not going to drink." *Id.* The NOPR also noted that in response to the

investigators' questions regarding whether the appellant brought alcohol, his answer included, "sir, if the CI said that I drank, yes, sir, I drank. I just don't recall whether – I know that I don't drink red wine. I know I don't drink –," IAF, Tab 1 at 13, and that in response to a later question as to "whether, if it was the CS that told them that [the appellant] drank alcohol, was it still [the appellant's] statement that [he] did not drink alcohol, that [he] only drank soft drinks and water," and the appellant replied "Sir, to my recollection, I do not recall if I drank alcohol. If this CS told you that I had alcohol at that meeting, then I had alcohol at that meeting," *Id.* at 14; IAF, Tab 5 at 431, 457.

¶18    In the initial decision, the administrative judge discussed that while S. Sutherland testified that he did not find the appellant credible because the appellant provided qualified and rambling responses rather than merely saying "yes or no," the appellant testified that he did not bring or drink alcohol during the entirety of the February 25 meeting and RD Palmeri testified that he did not see the appellant drink alcohol. ID at 14. In her analysis, the administrative judge concluded that the agency did not prove the first prong of the lack of candor test, that the appellant in fact gave false information, because the agency did not present any testimonial or documentary evidence that the appellant in fact drank alcohol during the debriefing. ID at 15. She also explained that she was "not convinced" the appellant lacked candor when he stated, "well if the CS said I drank, I drank," because, although she found it a strange reply, she credited the appellant's testimony that he was frustrated with the interview and exasperated with the number of times he was asked the same question. ID at 15-16. She also pointed out that when asked if the appellant had a beer or a glass of wine, the CS said "Yes. I think yes," which she noted was hardly definitive and misrepresented by the investigators. ID at 16; IAF, Tab 5 at 367-68.

¶19    On review, the agency argues that the administrative judge erroneously discounted the fact that the appellant provided three conflicting responses as to whether he consumed alcohol and that the appellant admitted he made an

inaccurate statement, which shows that it proved the appellant was not truthful. PFR File, Tab 1 at 17. In this regard, the agency points out that the appellant first said "No, sir" in response to the question of whether he consumed alcohol," and then said, "Sir, to my recollection, I do not recall if I drank alcohol," followed by, "If this CS told you that I had alcohol at that meeting then I had alcohol at that meeting." *Id.*; IAF, Tab 1 at 13-14, Tab 5 at 431, 457. The agency also disputes the appellant's contention that he was frustrated by being asked the same question numerous times, noting that the appellant first stated "sir, if the CI said that I drank, yes, sir, I drank" in response to the agency's questioning about whether the appellant *brought* alcohol, not whether he *drank* alcohol, which "directly contradicts" his frustration about being asked the same question repeatedly. PFR File, Tab 1 at 19; IAF, Tab 1 at 13, Tab 5 at 431. Additionally, the agency contends that the administrative judge erred by failing to address the second prong of the lack of candor test, and it reargues that it proved the appellant's intent to give an inaccurate statement concerning his own alcohol consumption. PFR File, Tab 1 at 18.

¶20    We are not convinced by the agency's arguments. The administrative judge thoroughly reviewed the agency's charge, the hearing testimony related to this issue, and the case law regarding lack of candor in her initial decision. ID at 13-16. Each of the appellant's responses that the agency points out above were specifically discussed in the NOPR that the administrative judge reviewed. IAF, Tab 1 at 13-14. We agree with the administrative judge that the record does not show that the appellant in fact consumed alcohol during the February 25 debriefing. ID at 15. Contrary to the agency's assertions, the administrative judge's focus on this issue was necessary to the analysis because the agency charged the appellant with lack of candor as to whether he "consumed" alcohol during the debriefing. PFR File, Tab 1 at 17 n.5; IAF, Tab 1 at 13. Further, although the agency contends that the appellant admitted his comment of "if the CS said I drank alcohol, then I must have had alcohol" was "inaccurate," he

actually testified, "I was wrong in saying that, Your Honor. But at that point, I didn't want to use profanity and be charged with unprofessional conduct." PFR File, Tab 1 at 18; HT at 332 (testimony of the appellant). Although we understand the agency's arguments about the appellant's responses and the timing of those responses, it is not obvious, and we do not agree, that the appellant necessarily made false statements as to whether he consumed alcohol given the repeated and convoluted nature of the agency's questions during the investigative interview and after considering the appellant's answers in context. IAF, Tab 5 at 406-490.

¶21        In any case, we find that the appellant did not knowingly give an incorrect or incomplete statement. Although the administrative judge may not have made an explicit finding as to this second prong of the lack of candor test because she found that the appellant did not give a false statement, she made credibility findings that are sufficient to satisfy the same. Specifically, as noted above, the administrative judge concluded that she was "not convinced" the appellant lacked candor when he stated, "if the CS said I drank, I drank," because she credited his testimony that he was frustrated with the investigative interview. ID at 15-16. We find that this is an implicit finding that the appellant did not give a knowingly false statement. Although the agency challenges the appellant's contention that he was frustrated by the interview, its argument really boils down to disagreement with the administrative judge's credibility determinations. PFR File, Tab 1 at 18-19. However, the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The agency has not presented sufficiently sound reasons here. Furthermore, in this regard we note that the two "conflicting" responses the agency alleges the appellant gave as to whether he consumed alcohol at the debriefing—"Sir, to my

recollection, I do not recall if I drank alcohol," followed by, "If this CS told you that I had alcohol at that meeting then I had alcohol at that meeting"—were both made during the interaction in which the administrative judge credited the appellant's testimony that he was frustrated. PFR File, Tab 1 at 17; IAF, Tab 1 at 13-14, Tab 5 at 457. Consequently, we find the agency's arguments unavailing and affirm as modified her decision to not sustain the lack of candor charge.

<u>The administrative judge properly found that the agency did not prove the fourth charge, false statement/documents.</u>

¶22    To establish a charge of misrepresentation, falsification, or lying, an agency must prove that an appellant (1) supplied wrong information; and (2) knowingly did so with the intention of defrauding, deceiving, or misleading the agency for his own private material gain. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 10-12 (2014). In the NOPR, the agency alleged that during the appellant's third supplemental investigative interview on September 8, 2021, the appellant "knowingly provided false statements to OPR Inspectors' questions regarding whether [he] spoke with anyone about [his] OPR interview, or theirs, with the intent to deceive DEA and evade the consequences for violating the [O]PR Confidentiality Agreement." IAF, Tab 1 at 17. The NOPR explained that during the appellant's first OPR interview on April 30, 2021, the appellant signed a confidentiality agreement prohibiting him from disclosing to anyone that he had been interviewed by OPR or that OPR was conducting an investigation into the meeting with the CS, that the agency later questioned the appellant about whether he had discussed the information from his OPR interview with anyone else or if anyone else discussed their OPR interview with him and that the appellant answered in the negative, and that the appellant's statements that he did not violate the confidentiality agreement were false because RD Palmeri signed a sworn statement admitting that he and the appellant had discussed the appellant's OPR interview. *Id.* at 17-18.

¶23     In the initial decision, the administrative judge thoroughly reviewed the NOPR and the testimony related to this charge, including the appellant's and RD Palmeri's testimony that RD Palmeri called the appellant on April 30, 2021, and directly asked him whether he had been interviewed by OPR, that the appellant responded affirmatively, and that no other details of the interview were discussed. ID at 16-19. She also noted that the appellant testified that he did not believe telling RD Palmeri about his OPR interview was a violation of the confidentiality agreement because RD Palmeri was his SES supervisor and employees are required to notify their supervisors when being interviewed by OPR; that he did not discuss the contents of his interview with anyone; and that he believed that he was providing truthful responses to OPR's questions. ID at 18-19. The administrative judge thereafter concluded that although there was no doubt that the appellant supplied incorrect information to OPR, he did not do so knowingly. ID at 19-20. The administrative judge credited the appellant's testimony that he believed he was answering the OPR's interview questions truthfully, including because his demeanor at the hearing was "straightforward without dissimulation" and his "testimony was direct and matter of fact with no pretense." ID at 19. She also found that because the appellant informed his West Palm Beach supervisors that he had been interviewed by OPR, it was "understandable" that he believed he needed to inform RD Palmeri when directly asked, and because she credited the appellant's testimony that he interpreted OPR's questions as going to the content of his previous interviews rather than the mere fact that he was interviewed at all. ID at 19-20.

¶24     On review, the agency recognizes that the administrative judge made explicit demeanor-based credibility determinations with respect to this charge and that our reviewing court has held, as noted above, that the Board must defer to an administrative judge's findings regarding credibility when those findings are based on the demeanor of the testifying witnesses and that it may overturn demeanor based credibility findings only if the Board has sufficiently sound

reasons for doing so. *Haebe*, 288 F.3d at 1301; PFR File, Tab 1 at 20. Here, the administrative judge appropriately relied on the factors set forth in *Hillen*, 35 M.S.P.R. at 458, to assess witness credibility and found the appellant to be credible. ID at 19. The agency does not challenge the administrative judge's demeanor-based credibility findings, but instead argues that because the administrative judge's two "remaining reasons" for finding that the appellant did not knowingly supply incorrect information are erroneous, her finding that the agency did not prove this charge is "untenable." PFR File, Tab 1 at 19-22. Nevertheless, the fact remains that the administrative judge's conclusion is based on her demeanor-based credibility findings and that the agency has failed to provide a basis for disturbing those credibility findings. Therefore, we do not disturb the administrative judge's determination that the agency did not prove the charge of false statement/documents.

We discern no error in the administrative judge's decision to mitigate the penalty to a letter of reprimand.

¶25    As discussed above, although the administrative judge did not sustain three of the agency's charges, she did sustain the charge of failure to follow written or oral instructions, which alleged that the appellant failed to follow written instructions when he failed to prepare and submit a DEA-6 form documenting the February 25, 2021 debriefing within 10 business days of the debriefing. ID at 16; IAF, Tab 1 at 15. When, as here, not all of the agency's charges are sustained, the Board will consider carefully whether the sustained charges warrant the penalty imposed by the agency. *Blank v. Department of the Army*, 85 M.S.P.R. 443, ¶ 9 (2000), *aff'd*, 247 F.3d 1225 (Fed. Cir. 2001). In doing so, the Board must first examine whether the agency has indicated either in its final decision or during proceedings before the Board that it desires a lesser penalty in the event not all of the charges are sustained. *LaChance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). If the agency has not so indicated, the Board may presume that the agency desires the maximum reasonable penalty and must examine whether

the agency-imposed penalty is within the maximum limits of reasonableness. *Id.* The Board is ultimately required to independently balance the relevant *Douglas* factors with heightened sensitivity when reviewing agency penalties upon fewer charges than those brought by the agency. *Id.* at 1257; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (articulating a nonexhaustive list of 12 relevant factors to be considered in determining the appropriateness of an imposed penalty).

¶26     Here, the administrative judge reviewed the testimonial and documentary evidence and found that, although the deciding official testified that the failure to follow instructions charge was the least serious charge, the agency never stated that it desired that a lesser penalty be imposed if only one of the four charges was sustained. ID at 22; HT at 154 (testimony of S. Sutherland). The administrative judge therefore reviewed the penalty determination to determine whether removal was the maximum reasonable penalty for the single, sustained charge.[4] ID at 22. The administrative judge discussed S. Sutherland's testimony that the appellant's failure to timely submit a DEA-6 form was serious because that form documents not only the contents of the interview but the fact that it occurred, and the fact that he did not credit the fact that RD Palmeri instructed the appellant to delay preparing the DEA-6 form until after the appellant completed language school and could return to the CS for a follow-up interview. ID at 22. While the administrative judge acknowledged the agency's need to keep timely and accurate records, she concluded that S. Sutherland's assessment of the charge was erroneous because he did not consider as mitigating the fact that an SES directed the appellant not to submit a report at the time of the February 25 debriefing and that the appellant eventually submitted a DEA-6 form memorializing the information obtained during the debriefing. ID at 22-23. The administrative judge concluded that considering the appellant had no prior disciplinary record

---

[4] In the initial decision, the administrative judge stated that her analysis turned on "whether *demotion* was in fact the maximum reasonable penalty," instead of *removal*, however this seems to be a simple editing error. ID at 22 (emphasis added).

and a good performance, removal was beyond the maximum reasonable penalty based on the sustained charge and that mitigation to a letter of reprimand was warranted. ID at 23.

¶27 On review, the agency argues that the administrative judge erred in mitigating the penalty because the record shows that the RD Palmeri never directed the appellant not to submit a DEA-6 form, and instead only directed him to conduct a full debrief of the CS when he was done with language school, and because the appellant's later-submitted DEA-6 report did not mention the actual February 25 meeting and such information was needed to verify that the interview actually occurred. PFR File, Tab 1 at 22-23. However, the administrative judge considered all of these points in the initial decision. ID at 16, 22-23. The agency's arguments again disagree with the administrative judge's evaluation of the evidence, which provides no basis for granting its petition for review. *See Broughton*, 33 M.S.P.R. at 359.

¶28 The agency also argues that the administrative judge "abused her discretion" and erred in her application of the law in mitigating the penalty because she did not indicate that she balanced the *Douglas* factors and she did not express how she concluded that a letter of reprimand was warranted. PFR File, Tab 1 at 23. Contrary to the agency's assertion, however, the administrative judge explicitly discussed *Douglas* and recited the list of factors to be determined in considering the appropriateness of the penalty. ID at 21-22. In her penalty analysis, the administrative judge also explicitly considered *Douglas* factors such as the nature and seriousness of the offense, the appellant's past disciplinary record, the appellant's past work record and his performance on the job, and numerous mitigating circumstances surrounding the charge. ID at 22-23; *see Douglas*, 5 M.S.P.R. at 305. The agency has not pointed us to any specific *Douglas* factor that is especially relevant here that the administrative judge failed to consider or that supports a different penalty. PFR File, Tab 1 at 23; *see*

*Douglas*, 5 M.S.P.R. at 306 (explaining that not all of the 12 factors will be pertinent in every case).

¶29     To the extent the agency suggests that a more severe penalty is warranted and contends that the administrative judge only presented a cursory analysis in deciding that a letter of reprimand was appropriate in this case, although we supplement the administrative judge's penalty analysis herein, we are not persuaded that the administrative judge erred.  PFR File, Tab 1 at 22-23.  In addition to the *Douglas* factor findings above that the administrative judge properly discussed, we have considered, as did the deciding official, that the appellant has over 24 years of Federal service and 17 years of service as a Special Agent, that the appellant's misconduct did not negatively affect the DEA's reputation, and that a letter of reprimand is consistent with the agency's table of penalties, which provides for a reprimand to removal for a first offense of failure to follow written or oral instructions.  *See Douglas*, 5 M.S.P.R. at 305-06; IAF, Tab 4 at 23-25.  Although we note that the Board has long recognized that law enforcement officers are held to a higher standard of conduct than other employees, we find that here, the appellant's singular failure to follow instructions in timely completing the DEA-6 form does not bear on his integrity, truthfulness, credibility, or ability to perform his duties at a satisfactory level, or indicate that he has a poor potential for rehabilitation.  *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 8 (2001); *see Douglas*, 5 M.S.P.R. at 305-06; IAF, Tab 4 at 23-29.  Upon balancing all of the relevant *Douglas* factors, we agree with the administrative judge's decision to mitigate the penalty to a letter of reprimand.

## ORDER

¶30     We ORDER the agency to cancel the removal action and substitute it with a letter of reprimand.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730

(Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶31 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶32 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶33 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶34 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[5]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives</u> this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.